'08 CIV 6544

Robert Penchina
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

NBC UNIVERSAL, INC., FOX NEWS      :
NETWORK, LLC, and FOX TELEVISION   :
STATIONS, INC.,                     :

               Plaintiffs,   :   **COMPLAINT**

           v.             :   **ECF Case**

REDLASSO, INC.,                 :

              Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiffs, NBC Universal, Inc. ("NBCU"), Fox News Network, LLC ("Fox

News"), and Fox Television Stations, Inc. ("Fox TV") (NBCU, Fox News, and Fox TV

are referred to collectively as the "Networks"), by their attorneys, complain against

Defendant Redlasso, Inc. ("Redlasso") as follows:

### INTRODUCTION

      1.    The Networks are among the world's preeminent creators, producers,

broadcasters and distributors of copyrighted television and radio programming, including

news and entertainment programming. The Networks have invested vast resources,

including time, effort, talent, creativity and money, to produce their programming, to

cover the news, and to establish their trademarks in the minds of the public. The

Networks and/or their licensees publicly perform, publicly display, and/or distribute the

Networks' programming and content by over-the-air broadcast, telecast on cable or satellite systems, via their own and licensed websites, and/or by other means.

2.      Redlasso has taken upon itself, without any license or authorization from the Networks, to engage in the business of providing the public with the Networks' news, entertainment, and other programming. Redlasso copies the Networks' programming twenty-four hours each day as that programming is being broadcast or telecast by the Networks or their licensees, and Redlasso then makes the programming available to internet users the world over via Redlasso's website, accessible at www.redlasso.com. Redlasso publicly performs, publicly displays, distributes and otherwise provides to the public the Networks' programming and content in its entirety. In addition, Redlasso itself makes, and permits users of the Redlasso website to make, "clips" of Network programming and content from the unauthorized full-length copies of Network programming already made by Redlasso. Redlasso markets its services to users who wish to view the Networks' programming on Redlasso's website and to bloggers and other internet publishers who wish to include in their own websites and publications Redlasso's unauthorized and infringing clips of the Networks' programming. In conducting its business and marketing itself, Redlasso not only infringes the Networks' copyrighted content, but makes unauthorized use of the Networks' famous trademarks and falsely conveys that Redlasso has been authorized by or has some affiliation with the Networks. In sum, Redlasso is attempting to build a business by stealing the Networks' programming and content and marketing itself as authorized to distribute, publicly perform and publicly display--and in fact publicly performing, publicly displaying and distributing--purloined copies of the Networks' programming and content.

2

## JURISDICTION AND VENUE

3.      This is an action for copyright infringement arising under the Copyright
Act of 1976, 17 U.S.C. § 101 et seq., for violation of the Lanham Act, 15 U.S.C. §§ 1114,
1117 and 1125, and for related claims of unfair competition under state law. This Court
has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338
and 1367.

4.      This Court has personal jurisdiction over Redlasso. Upon information and
belief, Redlasso maintains what it describes as a "listening post" within the State of New
York and this District, through or with which Redlasso records and/or otherwise
reproduces television and radio programming and content broadcast to viewers and
listeners located in New York. Redlasso systematically does business in New York,
including knowingly and intentionally providing interactive services to persons located in
New York, and transacting with and contracting to supply services to persons in New
York in connection with the matters giving rise to this suit. Redlasso offers to and does
provide services to persons in New York pursuant to which Redlasso supplies television
programming and content from New York television stations including, but not limited
to, WNBC New York and FOX 5 New York, which is received and viewed by those
persons in New York. Redlasso has committed infringing acts within New York, and has
committed infringing acts outside of New York causing harm to the Networks in New
York.

5.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(a).

{00137590;v1}

## THE PARTIES

6.    NBCU is, and at all times relevant to the matters alleged in the Complaint was, a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

7.    Fox News is, and at all times relevant to the matters alleged in the Complaint was, a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York.  Fox News owns and operates Fox News Channel and Fox Business Network.

8.    Fox TV is, and at all times relevant to the matters alleged in the Complaint was, a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

9.    Upon information and belief, defendant Redlasso is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business in King of Prussia, Pennsylvania.

## BACKGROUND

10.    Each of the Networks is engaged in the business of creating and producing original television and radio programming and content, gathering news and information, and broadcasting, publicly performing, publicly displaying, licensing and otherwise distributing their copyrighted programming and content.

11.    Among the copyrighted content created and distributed by NBCU are the Today Show, the NBC Nightly News, and the Tonight Show with Jay Leno (the "Tonight

4

Show"), and many other programs. NBCU's programming and content are distributed through NBCU's network of owned and operated or affiliated television and radio stations, including but not limited to WNBC in New York, New York; WMAQ in Chicago, Illinois; KNBC in Los Angeles, California; WCAU in Philadelphia, Pennsylvania; KNSD in San Diego, California; KNTV in San Francisco, California; and WRC in Washington, D.C.; and the cable channels CNBC, CNBC Business and MSNBC (collectively, the "NBC Affiliates"). In addition, NBCU offers video clips of its programming and content via its own websites, including nbc.com, cnbc.com, and msnbc.com, as well as through licensed websites such as Hulu.com.

12.    Pursuant to an agreement with the International Olympic Committee ("IOC") and the Beijing Organizing Committee for the Games of the XXIX Olympiad ("BOCOG"), NBCU has been granted the exclusive right to transmit audio and video coverage of the Beijing Olympic Games (the "Games") to audiences within the territory of the United States (except Puerto Rico). The IOC has also authorized NBC to pursue legal action against any party infringing this exclusive right. NBCU's rights also include an exclusive right, subject to the rights of the IOC and BOCOG, to interactive multimedia (i.e., web-based) coverage of both athletic and ceremonial events during the Games. In fact, NBCU's Internet coverage of the Games in Beijing will be extremely aggressive and robust.

13.    Since 1927, NBCU and its predecessors in interest have continuously used the famous NBC service mark in interstate commerce in connection with television broadcasting. In addition, NBCU and/or its predecessors in interest have continuously used the famous NBC Peacock design service mark in interstate commerce in connection

5

with production and distribution of television programs for more than 20 years. Among many other registrations, NBCU owns U.S. Trademark Registration Numbers 619,641 and 1,393,071 respectively for the aforementioned service marks.

14.     Among the copyrighted content created and distributed by Fox News are the Fox Report with Shepard Smith, On the Record with Greta Van Susteren, and the Dave Ramsey Show, and many other programs. Fox News' programming and content are distributed via the cable channels Fox News Channel and Fox Business Network (the "Fox News Stations"). In addition, Fox News offers video clips of its programming and content via its own websites, including foxnews.com and foxbusiness.com, as well as through licensed websites such as Hulu.com.

15.     Since 1996, Fox News and its predecessors in interest have continuously used the famous FOX NEWS CHANNEL service mark in interstate commerce in connection with television programming and television news. In addition, Fox News and/or its predecessors in interest have continuously used the famous Fox News Searchlight design service mark in interstate commerce in connection with television programming and television news services for more than a decade. Among many other registrations, Fox News owns U.S. Trademark Registration Numbers 2,162,714 and 2,159,608 for the aforementioned service marks.

16.     Among the copyrighted content created and distributed by Fox TV are Good Day LA, Fox 11 Ten O'Clock News, and Midday Sunday, and many other programs. These programs are broadcast by the Fox TV owned and operated television station KTTV in Los Angeles, California. In addition to Fox TV's content that airs on

6

KTTV, Fox TV's programming and content are distributed through Fox TV's network of owned and operated or affiliated television and radio stations, including but not limited to WBFF in Baltimore, Maryland; WFLD in Chicago, Illinois;; WNYW in New York, New York; WTFX in Philadelphia, Pennsylvania; KTVU in San Francisco, California; and WTTG in Washington, D.C. (collectively, the "Fox TV Affiliates"). In addition, Fox TV offers video clips of its programming and content via its own websites, including fox.com, as well as through licensed websites such as Hulu.com.

17.    Redlasso is engaged in the business of offering and providing to the public copies of television and radio programming and content created by others. Currently, the Redlasso website is in "beta" testing. In order to obtain full access to all of the features of the current beta version of redlasso.com, users need to input a password, which they can obtain for free by providing an email address to Redlasso as indicated on Redlasso's website.

18.    Redlasso records broadcast and cable television and radio content twenty-four hours each day from up to twelve different media markets, including New York, Los Angeles, Chicago, Philadelphia and San Francisco. Redlasso makes all of the content it records available for viewing or listening by users of the Redlasso website. In addition, as Redlasso boasts on its website, it enables users to "create clips for later viewing or posting to any site on the internet."
(http://corp.redlasso.com/Default.aspx?page=company).

19.    As described on Redlasso's website, Redlasso is in the business of "Content Syndication" and its mission is "to share income in the form of advertising

7

revenue" generated through the use of content created and owned by others.
(http://corp.redlasso.com/Default.aspx?page=company).

20.    As described on Redlasso's web site: "At Redlasso.com, you can search actual TV and radio news broadcasts from national and local channels, then clip and share stories that interest you.  Whether your passion is politics, sports, or your hometown . . . if it makes the news, you'll find it at Redlasso." (http://corp.redlasso.com/Default.aspx?page=faq).

21.    In Redlasso's own words: "Redlasso allows users to access multimedia content virtually in real time—in fact, Redlasso users can access content well in advance of some high-profile sites."  (http://corp.redlasso.com/Default.aspx?page=whyus).

22.    In addition to making television and radio content that it records available in its entirety, Redlasso also creates, and permits its users to create, clips of the recorded content.  Redlasso actively promotes and makes these clips available for viewing on the Redlasso website.  Redlasso simply presents these clips for viewing by users; the clips are not presented in connection with any commentary or analysis but, instead, are simply made available to be viewed, shared and/or included in the users' own web publications.  New clips constantly are added, but old clips remain available to users.  For example, on June 10, 2008, the Redlasso website offered users the opportunity to view the following clips, among many others: "Today Show interview w/ Alanis Morrisette" aired by NBCU on June 10, 2008 during the 9:00 a.m. EDT hour; "Chuck Norris Upset Over Gas Prices" aired by Fox News on June 10, 2008 during the 7:00 a.m. EDT hour; "The Raconteurs- Late Night With Conan OBrien Song 2" aired by NBCU on June 3, 2008 during the 1:00

a.m. EDT hour; "Anne's (Good Day NY) Bridal Shower" aired by Fox TV on June 3, 2008 during the 8:00 a.m. EDT hour; "Barry Manilow 7/16 NBC" aired by NBCU on July 16, 2007 during the 4:00 p.m. EDT hour; and "Fox Good Day Girl Scout Mural" aired by Fox TV on August 13, 2007 during the 7:00 a.m. EDT hour.

23.    The copies of broadcast and cable television and radio content made by Redlasso, and offered by Redlasso to its users, are saved, stored, or maintained on servers or other computer equipment owned or leased by, maintained on behalf of, or otherwise under the direction or control of, Redlasso.

24.    Redlasso's web site contains a search function that permits users of the website to search for keywords found in the copies of broadcast and cable television and radio content made by Redlasso. Unlike internet search engines such as Google or Yahoo!, however, Redlasso does not index and enable searches of content published and available on the internet. Rather, Redlasso's search function only searches within Redlasso's own archive of unauthorized copies of broadcast, cable and radio content that Redlasso illicitly copied. Thus, Redlasso does not make it easier for internet users to find content residing on other websites; it just makes it easier for Redlasso to publicly perform publicly display and distribute Redlasso's stash of unauthorized copies.

25.    Redlasso makes the content it offers available by "streaming" the content to users. When a user selects a video available on the Redlasso website and clicks on the "play" icon, Redlasso publicly performs, publicly displays and distributes the content by streaming the content from Redlasso's servers to the user's computer. The copies publicly displayed, publicly performed and distributed by Redlasso can only be viewed in

9

{00137590;v1}

a Redlasso video player, which, upon information and belief, is a modified Flash player (a player that handles video content in the Flash format). The Redlasso viewer prominently displays Redlasso's name and trademarks, which are visible any time content recorded and streamed by Redlasso is viewed by a user.

26.    Redlasso permits users of the Redlasso website to "embed" content made available by Redlasso into any other internet website. When a video is embedded into a website, the Redlasso video player appears on the page of the embedding site as if the video player is part of that site. When a user of the embedding site clicks on the Redlasso player, the video content plays and is visible on the embedding site. However, although the video content appears to be part of the embedding site, the video content continues to reside on Redlasso's servers and merely is streamed by Redlasso directly to the computer of the user visiting the embedding site.

## REDLASSO'S UNLAWFUL CONDUCT

27.    Redlasso has engaged, and continues to engage, in a pattern and practice of knowingly, intentionally and willfully infringing the Networks' copyrights, infringing the Networks' trademarks, committing unfair competition, and otherwise violating the Networks' rights.

28.    The Networks have not licensed Redlasso, nor otherwise granted Redlasso permission, authorization or consent, to reproduce and/or make clips of any of the Networks' programming and/or content. Nevertheless, Redlasso has made, and continues to make, unauthorized copies of the Networks' copyrighted programming and content around the clock every day. Redlasso has established what it calls "listening posts" in

10

major media markets, which it uses to record or otherwise make copies of all of the Networks' programming and content 24 hours per day. Once Redlasso copies the Networks' programming in its entirety, Redlasso, persons employed by or otherwise associated with Redlasso, and users of the Redlasso website create clips of the Network programming copied by Redlasso, which clips are reproduced and saved on Redlasso's servers. Redlasso offers to provide and in fact provides to the public the entirety of the programming and content copied by Redlasso and the clips thereof.

29. Without any authorization, permission, consent or license from the Networks, Redlasso publicly performs, publicly displays and distributes its unauthorized copies of the Networks' programming and content, including the entirety of the Networks' programming and content copied by Redlasso and the clips thereof, to users of the Redlasso website by streaming the Networks' programming and content to users who wish to view it.

30. On May 29, 2008, beginning at 7:00 a.m. EDT, NBCU broadcast the Today Show. While that program aired on various of the NBCU Affiliates, Redlasso reproduced the program in its entirety. Redlasso maintained the unauthorized copy on its servers or other storage devices for at least two weeks. Shortly after the program aired, Redlasso made its entire unauthorized copy of the May 29, 2008 Today Show available for distribution to or viewing by Redlasso users. In addition, Redlasso made unauthorized clips of the May 29, 2008 Today Show, which Redlasso saved on its servers and distributed, publicly performed and publicly displayed to users of the Redlasso site. Unauthorized clips of the May 29, 2008 Today show reproduced, distributed, publicly performed and publicly displayed by Redlasso include clips entitled:

11

- "David Cook on the Today Show," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=2d2bbbca-2dcf-4868-a483-
  cde5c1e16263;

- "David Cook and David Archuleta on the Today Show," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=124664ad-0246-437b-9ec1-
  10dab951e04c;

- "David Archuleta on the Today Show," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=4d556c0e-aecc-4f65-a816-
  7c36ef8695e0;

- "David Archuleta Sings on the Today Show," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=e2ca2b9e-25dd-4c49-8268-
  64df0842a325;

- "David Archuleta interview and song on the Today show," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=3695c099-babd-4de5-9fde-
  694c49a6d117;

- "David Cook interview and song on Today show," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=1f198915-7c55-4ce3-8eb8-
  271c1e530808;

- "David Cook and David Archuleta Together in a Today Show Interview," found
  at http://www.redlasso.com/ClipPlayer.aspx?id=f54fe89e-737c-4ef2-b636-
  afab7cac8320;

- "Scott McClellan on The Today show Part 1," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=27b7cbd1-2338-47bf-a2a1-
  a1f31b236016;

- "Scott McClellan on The Today show Part 2," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=3514eec8-9acf-46df-94e2-
  abbe725638d2;

- "Scott McClellan 'Today Show' Interview part 1," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=b3f53fcb-3543-4315-9ec2-
  ae6941811374;

- "Scott McClellan 'Today Show' Interview part 2," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=985fe0f3-eee7-4523-8826-
  d014e40cbe1d;

- "Scott McClellan 'Today Show' Interview part 3," found at
  http://www.redlasso.com/ClipPlayer.aspx?id=fcab62c0-09b5-4328-a0c2-
  6e5fa806fc86;

12

- "Scott McClellan Gives Exclusive Interview on the Today Show," found at http://www.redlasso.com/ClipPlayer.aspx?id=4c6a411d-281c-4c3d-a6da-94a6805667fb; and

- "Sarah Jessica Parker on Today show," found at http://www.redlasso.com/ClipPlayer.aspx?id=668d7bc7-cabd-4c0b-900b-a65b3d9a2d04.

31.    On May 29, 2008, beginning at 11:30 p.m. EDT, NBCU broadcast the Tonight Show.  The May 29, 2008 Tonight Show was a repeat of the Tonight Show that originally aired on May 12, 2008.  While the May 29, 2008 program aired on various NBCU Affiliates, Redlasso reproduced the program in its entirety.  Redlasso maintained the unauthorized copy on its servers or other storage devices for at least two weeks. Shortly after the program aired, Redlasso made its entire unauthorized copy of the May 29, 2008 Tonight Show available for viewing by Redlasso users.  In addition, Redlasso made unauthorized clips of the May 29, 2008 Tonight Show, which Redlasso saved on its servers and distributed, publicly performed and displayed to users of the Redlasso site. Unauthorized clips of the May 29, 2008 Tonight show reproduced, distributed, publicly performed and publicly displayed by Redlasso include clips entitled:

- "Jack Black on Jay Leno," found at http://www.redlasso.com/ClipPlayer.aspx?id=568f67ea-be8d-4c6a-9583-791972b43947;

- "Jack Black on Jay Leno pt. 2," found at http://www.redlasso.com/ClipPlayer.aspx?id=6bd298f2-3bfa-4a0d-8119-675c679bf06e; and

- "Clay Aiken Performs on Jay Leno," found at http://www.redlasso.com/ClipPlayer.aspx?id=fd6227bf-4498-43be-be3e-b68e0b03b5ee.

In addition, Redlasso made, saved on its servers, distributed, publicly performed and publicly displayed clips from the first time the same Tonight Show aired on May 12, 2008, including clips entitled:

13

{00137590;v1}

- "Jack Black-The Tonight Show with Jay Leno, Part One," found at http://www.redlasso.com/ClipPlayer.aspx?id=66a453e4-083e-4ccb-9470-77a3a28fca3a;

- "Jack Black-The Tonight Show with Jay Leno, Part Two," found at http://www.redlasso.com/ClipPlayer.aspx?id=dc9dbb72-deed-4a3e-92b1-b0e65917e582;

- "Clay Aiken performs on Leno," found at http://www.redlasso.com/ClipPlayer.aspx?id=baa575a1-bef8-470e-bafc-0ac71e40539c; and

- "Clay Aiken interview on Leno," found at http://www.redlasso.com/ClipPlayer.aspx?id=c5728386-666f-4afe-8df8-6c566cce2f8b.

32.    On June 2, 2008, beginning at 6:30 p.m. EDT, NBCU broadcast the NBC Nightly News. While that program aired on various NBCU Affiliates, Redlasso reproduced the program in its entirety. Redlasso maintained the unauthorized copy on its servers or other storage devices for at least two weeks. Shortly after the program aired, Redlasso made its entire unauthorized copy of the June 2, 2008 Nightly News available for viewing by Redlasso users. In addition, upon information and belief, Redlasso made clips of the June 2, 2008 Nightly News, which Redlasso saved on its servers and distributed, publicly performed and displayed to users of the Redlasso site.

33.    On May 29, 2008, beginning at 7:00 p.m. EDT, Fox News telecast the Fox Report with Shepard Smith. While that program aired on the Fox News Channel, Redlasso reproduced the program in its entirety. Redlasso maintained the unauthorized copy on its servers or other storage devices for at least two weeks. Shortly after the program aired, Redlasso made its entire unauthorized copy of the May 29, 2008 Fox Report with Shepard Smith available for viewing by Redlasso users. In addition, upon information and belief, Redlasso made unauthorized clips of the May 29, 2008 Fox

{00137590;v1}

Report with Shepard Smith, which Redlasso saved on its servers and distributed, publicly performed and displayed to users of the Redlasso site.

34.    On May 29, 2008, beginning at 8:00 p.m. EDT, Fox News telecast The Dave Ramsey Show. While that program aired on the Fox Business Network, Redlasso reproduced the program in its entirety. Redlasso maintained the unauthorized copy on its servers or other storage devices for at least two weeks. Shortly after the program aired, Redlasso made its entire unauthorized copy of the May 29, 2008 Dave Ramsey Show available for viewing by Redlasso users. In addition, upon information and belief, Redlasso made unauthorized clips of the May 29, 2008 Dave Ramsey Show, which Redlasso saved on its servers and distributed, publicly performed and displayed to users of the Redlasso site.

35.    On May 29, 2008, beginning at 10:00 p.m. EDT, Fox News telecast On the Record with Greta Van Susteren. While that program aired on the Fox News Channel, Redlasso reproduced the program in its entirety. Redlasso maintained the unauthorized copy on its servers or other storage devices for at least two weeks. Shortly after the program aired, Redlasso made its entire unauthorized copy of the May 29, 2008 On the Record with Greta Van Susteren show available for viewing by Redlasso users. In addition, Redlasso made unauthorized clips of the May 29, 2008 On the Record with Greta Van Susteren show, which Redlasso saved on its servers and distributed, publicly performed and displayed to users of the Redlasso site. Unauthorized clips of the May 29, 2008 On the Record with Greta Van Susteren show reproduced, distributed, publicly performed and publicly displayed by Redlasso include clips entitled:

15

- "Greta Van Susteren Rachel Ray's Scarf," found at http://www.redlasso.com/ClipPlayer.aspx?id=c8cea501-b5e5-4f03-a20e-4f95ef973644; and

- "Greta Van Susteren Rachel Ray Keffiyeh," found at http://www.redlasso.com/ClipPlayer.aspx?id=c88097a6-6388-4ce5-b1c1-adbc34083dc3.

36.    On May 29, 2008, beginning at 7:00 a.m. PDT, Fox TV broadcast Good Day LA. While that program aired, Redlasso reproduced the program in its entirety. Redlasso maintained the unauthorized copy on its servers or other storage devices for at least two weeks. Shortly after the program aired, Redlasso made its entire unauthorized copy of the May 29, 2008 Good Day LA show available for viewing by Redlasso users. In addition, upon information and belief, Redlasso made unauthorized clips of the May 29, 2008 Good Day LA show, which Redlasso saved on its servers and distributed, publicly performed and displayed to users of the Redlasso site.

37.    On May 29, 2008, beginning at 10:00 p.m. PDT, Fox TV broadcast FOX 11 Ten O'Clock News. While that program aired, Redlasso reproduced the program in its entirety. Redlasso maintained the unauthorized copy on its servers or other storage devices for at least two weeks. Shortly after the program aired, Redlasso made its entire unauthorized copy of the May 29, 2008 FOX 11 Ten O'Clock News available for viewing by Redlasso users. In addition, upon information and belief, Redlasso made unauthorized clips of the May 29, 2008 FOX 11 Ten O'Clock News, which Redlasso saved on its servers and distributed, publicly performed and displayed to users of the Redlasso site.

38.    On June 1, 2008, beginning at 9:00 a.m. PDT, Fox TV broadcast Midday Sunday. While that program aired, Redlasso reproduced the program in its entirety.

16

Redlasso maintained the unauthorized copy on its servers or other storage devices for at least two weeks. Shortly after the program aired, Redlasso made its entire unauthorized copy of the June 1, 2008 Midday Sunday program available for viewing by Redlasso users. In addition, upon information and belief, Redlasso made unauthorized clips of the June 1, 2008 Midday Sunday program, which Redlasso saved on its servers and distributed, publicly performed and displayed to users of the Redlasso site.

39.    Redlasso's acts of reproduction, public performance and public display of the Networks' copyrighted programming and content identified in paragraphs 30 through 38 above are just a sample of the massive ongoing pattern and practice of infringement undertaken by Redlasso. All day, each and every day, Redlasso continues to create unauthorized copies of Network programming and content as that programming and content is aired by the Networks.

40.    Without any authorization, permission, consent or license from the Networks, Redlasso permits and encourages third parties to embed into the third parties' own websites unauthorized copies of the Networks' programming and content made by Redlasso. Redlasso publicly performs, publicly displays and otherwise distributes the unauthorized copies of the Networks' programming and content for viewing by users of the third parties' web sites. The third party websites in which Redlasso's unauthorized copies are embedded have not themselves received authorization, permission, consent or license from the Networks to include Network programming or content on the third parties' websites. Examples of unauthorized copies of the Networks' programming and content made by Redlasso and embedded in a third party website include, but are not limited to, the following web pages:

17

- Webglitz, available at http://celebglitz.com/34886/Celebrity-Gossip/sarah-jessica-parker-today-show-video.aspx, which consists of the title "Sarah Jessica Parker Today Show Video," the embedded unauthorized Redlasso copy of NBCU's copyrighted content, the caption "*Sex And The City* star Sarah Jessica Parker appeared on *The Today Show* on Monday," and advertisements and links to other websites;

- Hot Gossip, available at http://www.hotgossip.com/sarah-jessica-parker-interviews/2211/, which consists of the title "Sarah Jessica Parker Interviews (Video)," the statement "Sarah Jessica Parker appeared on the *Today Show* and on *Live with Regis & Kelly* to promote 'Sex and the City: The Movie', which finally premieres this Friday nationwide. Click here to watch the interviews," the embedded unauthorized Redlasso copy of NBCU's copyrighted content (as well as two other embedded Redlasso unauthorized video clips), and advertisements and links to other websites;

- The Top Socialite, available at http://www.topsocialite.com/sarah-jessica-parker-today-show-video/, which consists of the title "Sarah Jessica Parker: 'Today Show' Video," a photograph of Ms. Parker, the statement "Sarah Jessica Parker visits the 'Today Show' on the roof and of course talks about the 'Sex and the City' movie that comes out tomorrow!," the embedded unauthorized Redlasso copy of NBCU's copyrighted content, and advertisements and links to other websites;

- Show Hype, available at http://showhype.com/video/david_archuleta_on_the_today_show/, which consists of the title "Video- David Archuleta on the Today Show," the statement "American Idol found this 17 days ago on media.redlasso.com David Archuleta on the Today Show," the embedded unauthorized Redlasso copy of NBCU's copyrighted content, and advertisements and links to other videos and other websites;

- TV Crunch, available at http://tv.popcrunch.com/david-archuleta-performs-think-of-me-on-may-29-today-show-video/, which consists of the title "David Archuleta Performs "Think of Me" on May 29 Today Show (Video)," the embedded unauthorized Redlasso copy of NBCU's copyrighted content, the caption "David Archuleta stops by the May 29 Today show in this video clip - check out the interview and then David performs 'Think of Me,'" the heading "What's Hot at Pop Crunch," and advertisements and links to other videos and other websites;

- Popmusicscene, available at http://www.popmusicscene.com/david-archuleta-on-the-today-show/, which consists of the embedded unauthorized Redlasso copy of NBCU's copyrighted content, the statement "Here's American Idol runner-up, David Archuleta singing early in the morning on the Today Show. This was after he was doing homework online :)," and advertisements and links to other websites;

- The Top Socialite, available at http://www.topsocialite.com/clay-aiken-leno-video/, which consists of the title "Clay Aiken 'Leno' Video," a photograph of Mr. Aiken, the embedded unauthorized Redlasso copy of NBCU's copyrighted content, the caption "Clay Aiken performs a song from his new CD 'On My Way Here' on Thursday's 'The Tonight Show With Jay Leno," and advertisements and links to other websites;

- Music is the heart of the soul, available at http://musicistheheartofoursourl.blogspot.com/2008/05/clay-aiken-performs-on-my-way-here-on.html, which consists of the title "Clay Aiken Performs 'On My Way Here' on Jay Leno," the embedded unauthorized Redlasso copy of NBCU's copyrighted content, the statement "Last night, the runner up from the second season of American Idol Clay Aiken performed his single "On My Way Here" on the Jay Leno Show. It was a great performance and congratulations to him for becoming a father. Enjoy!!!!!!" and advertisements and links; and

- Vodpod, available at http://vodpod.com/watch/717572-clay-aiken-on-leno-interview-51208, which consists of the title "Clay Aiken on Leno Interview 5/12/08" the embedded unauthorized Redlasso copy of NBCU's copyrighted content, and links to other videos.

41.    Anytime a visitor to any of the web pages identified in the preceding

paragraph, or a visitor to any other web page in which an unauthorized Redlasso copy of

Network content has been embedded, clicks on the "play" icon to view the video,

Redlasso distributes, publically performs and/or publically displays the video by

streaming the Redlasso unauthorized copy of the Network content to that visitor's

computer.

42.    Redlasso is well aware that it must obtain a license, consent or

authorization from copyright owners such as the Networks in order to copy, distribute,

publicly perform, publicly display and/or otherwise use their programming and content in

the manner done by Redlasso.  Thus, Redlasso's website states that "Redlasso utilizes an

advertising revenue share model *to compensate multimedia content*

*producers*/creators/owners and syndicators." (Found at

http://corp.redlasso.com/Default.aspx?page=whyus (emphasis added)).  Redlasso

19

accordingly assured third parties wishing to use Redlasso's services that Redlasso was "finalizing agreements" with the all of the content owners. When Redlasso presented itself and its business model at trade shows, industry gatherings and other events, third parties repeatedly informed Redlasso that Redlasso needed the consent of content owners such as the Networks in order to copy their content and make it available to others. Redlasso brushed off such information, routinely indicating to users and potential users, investors and potential investors, publishers and others that Redlasso is "working with all the broadcasters."

43.    Redlasso's assurances were false. Redlasso had and has no agreements with the Networks to permit Redlasso to copy, offer to the public, distribute, publicly perform, publicly display or otherwise use any Network programming or content. Some of the Networks individually sent letters to Redlasso demanding that Redlasso cease and desist from making any further use of their programming and content. Redlasso ignored these letters. On May 19, 2008, the Networks, among others, collectively sent a cease and desist letter to Redlasso demanding that Redlasso cease and desist from any and all acts of reproducing, distributing, and publicly performing and/or displaying the Networks copyrighted content, engaging in false and deceptive practices concerning any supposed affiliation with or authorization received from the Networks, and infringing the Networks trademarks.

44.    Rather than halt its infringing conduct, Redlasso responded to the Networks' cease and desist letter by, among other things, releasing a notice to its users assuring them that Redlasso would continue to make Network content available on the Redlasso website, and issuing a series of press releases announcing that Redlasso had

{00137590;v1}

hired persons formerly affiliated with television networks and indicating that "it will continue to make its site available for use." Redlasso, in fact, did not stop reproducing, publicly performing or publicly displaying the Networks' programming and content. Following each of the Networks' demands that Redlasso halt its unauthorized use of their content, and following the Networks' joint cease and desist letter dated May 19, 2008, Redlasso knowingly, blatantly and willfully continued to engage in its unlawful pattern and practice of infringing the Networks' programming and content, infringing the Networks' trademarks, and deceptively conveying that it had obtained rights to use the Networks' content. Redlasso's willful infringement of the Networks' programming and content continues to the present.

45.    All the while that Redlasso engaged in its pattern and practice to appropriate the Networks' programming and content for its own unauthorized uses, Redlasso knowingly or negligently engaged in acts intended to and which did confuse the public into believing that Redlasso had acquired from the Networks a right to reproduce, distribute, publicly perform, publicly display, and to permit the embedding of Network programming and content.

46.    Redlasso has communicated, expressly or impliedly, to potential investors in Redlasso's business, potential users of Redlasso's website and the public at large that the Networks consented to Redlasso's use of the Networks' programming and content. Redlasso ubiquitously displays the Networks' famous trademarks on the Redlasso website and in connection with Redlasso's services. Redlasso's website falsely states that "[t]he trademarks, service marks and logos contained on the Redlasso Website ('Marks') are owned by *or licensed to Redlasso*." (http://www.redlasso.com/terms.aspx

{00137590;v1}

(emphasis added)).  The FAQ (frequently asked questions) page of the Redlasso website (found at http://corp.redlasso.com/faq.html) instructs users how they can use Redlasso specifically to find and view programs from NBC and FOX, among other national networks.  Upon information and belief, (i) representatives of Redlasso have contacted bloggers and other internet publishers with the intent of convincing those bloggers and publishers to use Redlasso's services, and (ii) during those contacts have conveyed that Redlasso had authorization from the Networks to make the Networks' content available for use by Redlasso and embedding into the bloggers' or publishers' own websites.  Redlasso promotes itself on the MySpace.com website by boldly declaring that Redlasso is "'THE LEGITIMATE SOURCE OF BROADCAST MEDIA ON THE WEB.'" http://profile.myspace.com/index.cfm?fuseaction=user.viewprofile&friendid=207467891. Redlasso has also marketed itself as an alternative to the Networks' services for viewing Network content.  Thus, an earlier version of Redlasso's website touted the experience of a Redlasso user who stated: "I'm originally from New York City and . . . Redlasso allows me to get all my New York news, right here in Philadelphia."  Redlasso has endeavored to create in the public mind -- and has succeeded to the Networks' great and continuing harm -- a mistaken belief that there is an affiliation, association, sponsorship or other connection between the Networks and Redlasso.

## COUNT I

## COPYRIGHT INFRINGEMENT

47.    The Networks repeat and reallege each of the allegations set forth in paragraphs 1 through 46 above as though fully set forth herein.

48.    NBCU's television and radio programming and content are original with NBCU and are copyrightable subject matter under the laws of the United States.

49.    The Register of Copyrights has issued Certificates of Registration Numbers PA 1-598-778, PA 1-598-776, and PA 1-598-029 to NBCU respectively for the May 29, 2008 broadcast of the Today Show, that aired beginning at 7:00 a.m. EDT; the June 2, 2008 broadcast of the NBC Nightly News, that aired beginning at 6:30 p.m. EDT; and the May 12, 2008 broadcast of the Tonight Show, that was rebroadcast on May 29, 2008 beginning at 11:30 p.m. EDT.

50.    Fox News' television and radio programming and content are original with Fox News and are copyrightable subject matter under the laws of the United States.

51.    The Register of Copyrights has issued Certificates of Registration Numbers PA 1-598-594, PA 1-598-596, and PA 1-598-595 to Fox News respectively for the May 29, 2008 broadcast of the Fox Report with Shepard Smith, that aired beginning at 7:00 p.m. EDT; the May 29, 2008 broadcast of the Dave Ramsey Show, that aired beginning at 8:00 p.m. EDT; and the May 29, 2008 broadcast of On the Record with Greta Van Susteren, that aired beginning at 10:00 p.m. EDT.

52.    Fox TV's television and radio programming and content are original with Fox TV and are copyrightable subject matter under the laws of the United States.

53.    The Register of Copyrights has issued Certificates of Registration Numbers, PA 1-598-480, PA 1-598-477, and PA 1-598-478 to Fox TV respectively for the May 29, 2008 broadcast of Good Day LA, that aired beginning at 7:00 a.m. PDT; the

23

May 29, 2008 broadcast of FOX 11 Ten O'Clock News, that aired beginning at 10:00 p.m. PDT; and the June 1, 2008 broadcast of Midday Sunday, that aired beginning at 9:00 a.m. PDT.

54.    The Networks have complied in all respects with 17 U.S.C. §§ 101, et seq., and have secured the exclusive rights and privileges in and to the copyrights in their television and radio programming and content.

55.    By its actions alleged above, Redlasso has infringed and will continue to infringe the Networks' copyrights in and relating to the Networks programming and content.

56.    The actions of Redlasso are willful within the meaning of the Copyright Act, 17 U.S.C. §§ 101, et seq.

57.    As a direct and proximate result of its wrongful conduct, Redlasso has obtained benefits, including but not limited to investments in the company to which Redlasso is not entitled.

58.    As a direct and proximate result of Redlasso's wrongful conduct, the Networks each have been substantially and irreparably harmed in an amount not readily capable of determination.  Unless restrained by this Court, Redlasso will cause further irreparable injury to the Networks.

59.    By reason of the foregoing, the Networks are entitled to injunctive relief enjoining further infringement of their copyrighted programming and content by

24

Redlasso, and to recover such actual or statutory monetary damages that have been caused by or are attributable to Redlasso's unlawful acts.

## COUNT II

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

60.     The Networks repeat and reallege each of the allegations set forth in paragraphs 1 through 59 above as though fully set forth herein.

61.     Redlasso has, without consent from any of the Networks, used each of their registered trademarks in connection with Redlasso's own services and its marketing and promotion thereof, and has made false and misleading descriptions and representations of fact, in manners which have caused actual confusion and which are likely to continue to cause confusion and mistake and to deceive consumers into believing that there is an affiliation, connection, or association of Redlasso with the Networks—where there is none—and that the Networks' have sponsored or given approval of Redlasso's services—when they have not.

62.     Among other things, Redlasso's false and deceptive statements concerning its relationship with and receipt of approval from all of the networks and broadcasters, and/or other misrepresentations of similar meaning and effect, have and are likely to deceive consumers into mistakenly believing that Redlasso possesses the right to reproduce and publicly perform and publicly display, and to make available for embedding in third party websites, the Networks' programming and content.

63.     The Networks have not licensed Redlasso nor given Redlasso permission to reproduce and make available to the public copies of the Networks' copyrighted

{00137590;v1}

content, and they have been irreparably harmed and will continue to be irreparably harmed unless Redlasso is enjoined from misrepresenting that it is authorized to reproduce and make available for embedding in other websites the content in which the Networks own the copyright. In addition, consumers and other members of the public have been harmed, and will continue to be harmed, by Redlasso's deceptive advertising that Redlasso possesses rights to reproduce, use and offer to the public the Networks' content, when in fact it does not.

64. Redlasso's material false representations of fact on its website, at trade shows and other commercial gatherings, and in its advertising and promotion misrepresent the inherent nature, characteristics and qualities of Redlasso's services.

65. By its actions alleged above, Redlasso has infringed the Networks' marks, has falsely designated the source of its services, and has engaged in false advertising and unfair competition, all in violation of Section 43 of the Lanham Act.

66. As a direct and proximate result of Redlasso's acts of trademark infringement, false designation of origin, false advertising and unfair competition, Redlasso has caused and is causing substantial and irreparable injury to the Networks, their reputation and goodwill, in amounts not readily capable of determination. Unless restrained by this Court, Redlasso will cause further irreparable harm to the Networks.

67. By reason of the foregoing, the Networks are entitled to injunctive relief enjoining further violations of Section 43(a) of the Lanham Act, and to recover such monetary damages that have been caused by Redlasso's unlawful acts.

{00137590;v1}

## COUNT III

## TRADEMARK INFRINGEMENT (15 U.S.C. §§ 1114, 1117)

68.    The Networks repeat and reallege each of the allegations set forth in paragraphs 1 through 67 above as though fully set forth herein.

69.    NBCU is the owner of the following trademark registrations on the Principal Register of the United States: Registration No. 619,641 for the mark NBC; Registration No. 1,393,071 for the Peacock design mark.  These U.S. Trademark Registrations for NBCU's marks have obtained incontestable status.

70.    Fox News is the owner of the following trademark registrations on the Principal Register of the United States: Registration No. 2,162,714 for the mark FOX NEWS CHANNEL; Registration No. 2,159,608 for the Fox News Searchlights design mark.  These U.S. Trademark Registrations for Fox News' marks have obtained incontestable status.

71.    Redlasso has, without consent from the Networks, used the Networks' registered marks in connection with Redlasso's own goods and services and its marketing and promotion thereof, in manners which have caused actual confusion and which are likely to continue to cause confusion and mistake and to deceive consumers as to the source or origin of Redlasso's services.

72.    By its actions alleged above, Redlasso has damaged the Networks and the business and goodwill symbolized by their registered marks.

{00137590;v1}

73.     By its actions alleged above, Redlasso has infringed and will continue to infringe the Networks' marks in violation of Section 32 of the Lanham Act. The actions of Redlasso constitute willful trademark infringement.

74.     As a direct and proximate result of its wrongful conduct, Redlasso has garnered investments, and realized other benefits to which Redlasso is not entitled.

75.     As a direct and proximate result of Redlasso's wrongful conduct, Redlasso has caused and is causing substantial and irreparable harm to the Networks, the Networks' registered marks and to the business and goodwill represented by the registered marks, in an amount not readily capable of determination. Unless restrained by this Court, Redlasso will cause further irreparable harm to the Networks.

## COUNT IV

## TRADEMARK INFRINGEMENT UNDER STATE LAW

76.     The Networks repeat and reallege each of the allegations set forth in paragraphs 1 through 75 above as though fully set forth herein.

77.     The acts of Redlasso described above constitute trademark infringement under the laws of each state in which Redlasso has done business, including the states in which persons or businesses were located when Redlasso streamed, emailed, telephoned, published, gave presentations or otherwise communicated to those persons or businesses solicitations concerning, or offers to provide, the opportunity to view or embed the Networks' programming or content.

{00137590;v1}

78.     As a direct and proximate result of Redlasso's wrongful conduct, Redlasso has caused and is causing substantial and irreparable harm to the Networks, the Networks' marks and to the business and goodwill represented by the Networks' marks, in an amount not readily capable of determination. Unless restrained by this Court, Redlasso will cause further irreparable harm to the Networks.

## COUNT V

## UNFAIR COMPETITION UNDER STATE LAW

79.     The Networks repeat and reallege each of the allegations set forth in paragraphs 1 through 78 above as though fully set forth herein.

80.     The acts of Redlasso described above constitute unfair competition under the laws of each state in which Redlasso has done business, including the states in which persons or businesses were located when Redlasso streamed, emailed, telephoned, published, gave presentations or otherwise communicated to those persons or businesses solicitations concerning, or offers to provide, the opportunity to view or embed the Networks' programming or content.

81.     As a direct and proximate result of Redlasso's acts of unfair competition and false designation of origin, Redlasso has caused and is causing substantial and irreparable injury to the Networks, their reputation and goodwill, in an amount not readily capable of determination. Unless restrained by this Court, Redlasso will cause further irreparable harm to the Networks.

{00137590;v1}

## PRAYER FOR RELIEF

WHEREFORE, the Networks respectfully request that this Court enter judgment in their favor as follows:

1.    On Count I:  (i) for a preliminary and permanent injunction enjoining Redlasso from reproducing, distributing, publicly performing and/or publicly displaying any of the Networks' programming or content in connection with any service offered or provided by Redlasso; (ii) for the Networks' attorneys' fees, costs and expenses; (iii) for all damages suffered by each of the Networks and for any profits or gain by Redlasso attributable to infringements of the Networks' copyrights in amounts to be determined at trial or, alternatively, for statutory damages for willful infringement; and (iv) for such other and further relief as this Court may deem just and proper;

2.    On Count II:  (i) for a preliminary and permanent injunction enjoining Redlasso from making any false designations of origin or statements that falsely convey any sponsorship, affiliation or connection between the Networks and Redlasso's services; (ii) for the Networks' attorneys' fees, costs and expenses; (iii) for all damages suffered by the Networks and for any profits or gain by Redlasso attributable to Redlasso's false designation of the origin of its services and/or statements relating to any sponsorship, affiliation or other connection between Redlasso's services and the Networks in amounts to be determined at trial; and (iv) for such other and further relief as this Court may deem just and proper;

3.    On Count III:  (i) for a preliminary and permanent injunction enjoining Redlasso from infringing any of the Networks' trademarks; (ii) for the Networks'

{00137590;v1}

attorneys' fees, costs and expenses; (iii) for treble of all damages suffered by each of the Networks and for any profits or gain by Redlasso attributable to infringements of the Networks' trademarks in amounts to be determined at trial; and (iv) for such other and further relief as this Court may deem just and proper;

4.      On Count IV:  (i) for a permanent injunction enjoining Redlasso from infringing any of the Networks' trademarks; (ii) for the Networks' attorneys' fees, costs and expenses; (iii) for all damages suffered by each of the Networks and for any profits or gain by Redlasso attributable to infringements of the Networks' trademarks in amounts to be determined at trial; (iv) for punitive damages in amounts to be determined at trial; and (v) for such other and further relief as this Court may deem just and proper; and

5.      On Count V:  (i) for a permanent injunction enjoining Redlasso from engaging in further acts of unfair competition; (ii) for the Networks' attorneys' fees, costs and expenses; (iii) for all damages suffered by each of the Networks and for any profits or gain by Redlasso attributable to Redlasso's acts of unfair competition in amounts to be determined at trial; (iv) for punitive damages in amounts to be determined at trial; and

31

(v) for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      July 23, 2008

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By: _____

    Robert Penchina

Of counsel:

Jeanette Melendez Bead
LEVINE SULLIVAN KOCH &
SCHULZ, L.L.P.
1050 17th Street NW, Suite 800
Washington, DC 20036
(202) 508-1100

321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

Attorneys for Plaintiffs NBC Universal, Inc., Fox
News Network, LLC, and Fox Television Stations,
Inc.

{00137590;v1}